IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

ESSLONIA DIXON )
)
v. ) No. 2:18-0014
)
WAL-MART STORES EAST, LP )

# **MEMORANDUM OPINION**

This case is before the Magistrate Judge for all purposes, including entry of a final judgment, by consent of the parties. *See* Docket Entry ("DE") 14, 21. On August 28, 2019, the Court entered an order requiring Plaintiff Essolonia Dixon to file a brief in opposition to summary judgment in light of outstanding questions regarding the duty of care owed by Defendant Wal-Mart Stores East, LP ("Wal-Mart") in the instant matter. *See* DE 59.[1] Plaintiff has since filed both a brief (*see* DE 65) and an accompanying statement of undisputed facts. *See* DE 66. Defendant has filed a responsive brief (*see* DE 67) and a response to Plaintiff's statement of undisputed facts. *See* DE 68.

Upon review of the parties' respective filings, the Court finds that summary judgment is appropriate and therefore DISMISSES this case WITH PREJUDICE.

### **I. BACKGROUND**

This matter involves a slip and fall accident that occurred in a Wal-Mart store in Crossville, Tennessee. While walking next to the shampoo or hair care aisle of the Wal-Mart on

---

[1] As detailed in this prior order, the Court raised the issue of summary judgment *sua sponte* to avoid the needless expenditure of extensive resources by both the judiciary and the parties until a need for trial was demonstrated. *See* DE 59 at 1-3.

December 27, 2016, Plaintiff stepped on a clear, liquid substance located on the floor and fell to the ground, which caused her to suffer multiple injuries. DE 68 at ¶¶ 5, 6, 9. A subsequent investigation revealed that the substance in question was hair gel that had been spilled onto the floor by another customer, Jennifer Messersmith, and was present on the floor for two minutes and 18 seconds before Plaintiff stepped in it. *Id.* at ¶ 7, 8.

Plaintiff claims that Ms. Messersmith's statement that the lid "came off the hair gel" when she dropped it onto the floor, thus causing the spill, demonstrates that the lid on the hair gel container "was likely already loose when placed by a stocker[.]" DE 65 at 2. Because the stocker was an employee of Wal-Mart, Plaintiff argues, Defendant violated its duty to ensure that the products placed on its store shelves were "in a fit condition to be displayed for consumers." *Id*. Plaintiff alternatively argues that Wal-Mart had constructive notice of the substance in question and that a jury could find that two minutes and 18 seconds was a sufficient amount of time to alert Defendant to the existence of the hazardous condition on its floor. *Id*. at 3.

Defendant responds to Plaintiff's claim that the lid on the hair gel container was "likely already loose" by noting that argument requires exactly the type of jury speculation that is meant to be excluded from trial. DE 67 at 1. Defendant asserts that Plaintiff's failure to introduce any evidence suggesting that the lid was loose prior to Ms. Messersmith dropping the container on the floor requires dismissal of this action. *Id*. at 2. Defendant also responds to Plaintiff's alternative claim by arguing that no reasonable juror could conclude that Wal-Mart had constructive notice of the hazardous condition as the substance was impossible to see unless one was "standing over it looking for it[.]" *Id*. at 4.

## II. ANALYSIS

Rule 56 permits a district court to grant summary judgment in favor of a non-moving party "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f). District courts are "widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). When considering whether summary judgment is appropriate, the court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon County.*, 203 F.3d 426, 431 (6th Cir. 2000). Furthermore, the Court must view the evidence and all inferences drawn from the underlying facts "in the light most favorable to the party opposing" summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986) (internal citation omitted). However, conclusory allegations, speculation, and unsubstantiated assertions are not evidence and are insufficient to overcome summary judgment. *Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003) (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (holding that plaintiff "could not rest" on allegations of conspiracy to get to a jury without setting forth "any significant probative evidence tending to support the complaint") (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

Because this is a diversity case, the Court must apply Tennessee's substantive law of negligence. *Morales v. Am. Honda Motor Co.,* 151 F.3d 500, 506 (6th Cir. 1998). To succeed on a claim of negligence, a plaintiff must demonstrate the following: (1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached that duty of care; (3) that the plaintiff

suffered some injury or loss; (4) cause in fact; and (5) proximate, or legal, cause. *McClung v. Delta Square Ltd. Partnership,* 937 S.W.2d 891, 894 (Tenn. 1996). Additionally, to hold an owner of a business liable in negligence for a dangerous condition on its premises, the plaintiff must show either (1) that the premises owner caused the condition, or (2) if not, "that the owner ... had actual or constructive notice that the condition existed prior to the accident." *Blair v. West Town Mall,* 130 S.W.3d 761, 764 (Tenn. 2004) (internal citations omitted). If liability is predicated on constructive knowledge by the defendant, there must be proof indicating that the dangerous condition at issue "existed for such a length of time that the defendant knew, or in the exercise of ordinary care should have known, of its existence." *Jones v. Zayre, Inc.*, 600 S.W.2d 730, 732 (Tenn. Ct. App. 1980) (internal citation omitted).

To prevail, Plaintiff must therefore demonstrate that Defendant either caused or created the hair gel spill on the floor or had actual or constructive notice of the spill. *Hardesty v. Service Merchandise Co., Inc.*, 953 S.W.2d 678, 683 (Tenn. Ct. App. 1997). If Plaintiff succeeds in establishing that Defendant either caused or created the spill or had constructive notice of the spill, then Defendant owed a duty of care to Plaintiff to clean up the spill or otherwise remedy the dangerous condition. *White v. Bi-Lo, LLC*, No. M2007-2698-COA-R3-CV, 2008 WL 441578, at *5 (Tenn. Ct. App. Sept. 26, 2008). If, however, Plaintiff fails to demonstrate that Defendant caused or created the spill or had constructive notice of the spill before she fell, then Defendant did not owe her a duty to remedy the condition. *Id.* The Court concludes that neither of Plaintiff's theories of liability is enough to survive judgment as a matter of law.

First, Plaintiff cites no evidence for her attenuated claim that a Wal-Mart employee "likely" caused the slippery condition of the floor by failing to ensure that the subject hair gel

container's lid was secure before placing the item on a shelf. Plaintiff purports to rely on the witness statement of the person who dropped and spilled the hair gel, Jennifer Messersmith. Ms. Messersmith says in her statement that the "lid came off the hair gel, spilled on the floor." DE 63-1 at 1. The most favorable possible construction of this statement is that the hair gel lid may have been loose before it was dropped.[2]

But the fact that the lid may have been loose is not evidence that Defendant caused or created the hair gel spill; it's not even evidence that an employee of Defendant was responsible for the loose lid. Another customer could have loosened the lid and placed the product back on the shelf. Or Ms. Messersmith could have loosened the lid (either intentionally or unintentionally) while she was carrying the container from the hair care aisle to the main walkway[3] and then lost her grip on the container. Or the lid, even if loose, could have come off the container, resulting in spilled product, only when it was dropped by Ms. Messersmith. Any of those circumstances is possible, and nothing more than speculation. Just as Plaintiff's contention that the lid was "likely already loose when placed [on the shelf] by a stocker who is an employee of Defendant Wal-Mart" (DE 65 at 2) is nothing more than pure conjecture.

In the absence of proof of how the dangerous condition "came about, it would be improper to permit the jury to speculate on [this] vital element." *Id*. (collecting cases). Because

---

[2] Arguably, this construction of the evidence is unreasonably favorable to Plaintiff since Ms. Messersmith's statement does not clearly state whether the hair gel lid came off before or after she dropped the container. The surveillance footage shows only that Ms. Messersmith picked up the container from the floor after dropping it. Nevertheless, for purposes of consideration of summary judgment, the Court will give Plaintiff the benefit of the broadest possible construction, which is that the hair gel container lid was loose.

[3] *See* illustrations below.

that is precisely what Plaintiff's theory requires, the argument must be rejected. *See Stanley v. Walmart Stores East, LP,* No. 15-86-ART, 2016 WL 3079837, at *2 (E.D. Ky. May 31, 2016) ("If the plaintiff has no evidence that a Walmart employee caused the spill, how could a 'reasonable' jury find that Walmart caused the spill anyway? A jury must base its decision on actual evidence, not hunch or speculation.") (citing *Corley v. Wal-Mart Stores East, LP*, No. 15-5202, 2016 WL 53406, at *3 (6th Cir. Jan. 4, 2016)).

Further, Plaintiff offers no real analysis as far as her claim that Wal-Mart caused or created the dangerous condition is concerned. She has not, for example, explained the elements of a duty of a business owner "to ensure that the products on their shelves are in a fit condition to be displayed for customers." (DE 65 at 2.) Nor, as discussed above, has she pointed to any evidence in the record that Wal-Mart breached this duty, even if one exists. This kind of cursory argument without any analysis or support is insufficient to survive summary judgment. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.")[4] For this additional reason, dismissal of this claim or theory is warranted.

---

[4] The paucity of Plaintiff's argument is surprising given her attorney's posture during the pretrial conference. In response to the Court's expressed concern about the sufficiency of proof of liability given the parties' stipulations of fact, Plaintiff's counsel assured the Court that this case did not hinge on whether Defendant had constructive notice of the slippery floor at issue, which is discussed below, but rather on an alternative theory of liability that would require consideration by a jury. However, Plaintiff's undeveloped brief contains no evidence or authority to support her tenuous position.

Plaintiff's second theory of liability similarly fails to create a genuine factual dispute sufficient to overcome summary judgment. Because Plaintiff's argument requires an examination of video footage documenting the incident at issue, the Court will briefly recount this evidence. There are two video files, the first of which shows just over two hours of footage of the section of the store in which the accident occurred. A rendering of the space and the approximate location of the spilled substance is depicted below in Illustration 1.

*Illustration 1*



When the video clip's timer reads 57:37, a woman presumed to be Ms. Messersmith moves from the space identified above as the "Hair Care Aisle" into the space identified as "Area

7

A," which is located between multiple rows of shelves and two kiosk displays.[5] At the 57:40 mark, Ms. Messersmith can be seen (from behind) bending over and picking up an object she has dropped on the floor in front of her in Area A, between the hair care aisle and the bottom display kiosk. She then returns to the hair care aisle to place the item back on the shelf, which is shown in the second video file. The substance that has spilled onto the floor after being dropped by Ms. Messersmith is not visible in either of these clips.

Several people walk through or close to the hair gel on the floor over the next few minutes of the video, some of whom notice the substance only after stepping in it. At the 58:04 mark, a woman with a shopping cart walks through the area containing the spilled substance and can be seen looking down at the area shortly thereafter. At the 58:08 mark, a man walks through the affected area without noticing the substance. At the 58:17 mark, another man with a shopping cart appears to walk through, or at a minimum, immediately next to, the spilled hair gel without noticing it. Immediately after this man exits the area, with 58:27 on the timer, a Wal-Mart employee can be seen entering the screen from the bottom of the space identified as "Area B" in the illustration above and walking between the two display kiosks to the top of Area A without noticing the spilled hair gel. The video suggests that this employee was, at her closest point, somewhere between five and 10 feet from the substance. The route of the employee is depicted below in Illustration 2.

---

[5] Although the parties appear to agree as to the times of day at which the various actions at issue took place, the video evidence does not include such details. The Court will therefore refer only to the numbers denoted by the video clip's timer.

*Illustration 2*



After the employee exits Area A, a man in a yellow shirt walks through the affected area and clearly notes the substance on the floor after stepping in it. At the 59:00 mark, a second Wal-Mart associate begins walking from the top of Area B to the bottom of Area B. At the same time, however, four different individuals, one of whom is pushing a shopping cart, are moving from the top of Area A to the bottom of Area B, thereby obstructing the employee from any view of the area containing the spilled substance.[6] This employee's route and the customers' approximate locations are depicted in Illustration 3, below:

---

[6] The Court assumes that this individual is a Wal-Mart employee based on her attire, which appears to include a Wal-Mart vest. Plaintiff makes no effort to identify any of the employees allegedly present in the video but treating those individuals as Wal-Mart employees is a construction of the facts most favorable to Plaintiff for purposes of the Court's consideration of summary judgment.

*Illustration 3*



At the 59:09 mark, three different people, one of whom is pushing a shopping cart, walk through or immediately adjacent to the substance without noticing it. At 59:18, another individual who is presumed to be a Wal-Mart employee can be seen walking almost exactly the same route that the first Wal-Mart associate followed, depicted above in Illustration 2.[7] This employee similarly fails to observe the substance on the floor.

---

[7] It bears reiterating that Plaintiff makes no effort to identify any of the purported Wal-Mart employees in her brief. However, Defendant's reference to an employee appearing at 4:04:46 p.m. (DE 67 at 3) appears to correspond to the 59:18 mark on the video clip. The man in question is not wearing the same navy Wal-Mart vest that the other two employees are wearing, but instead sports a lighter blue shirt with dark-colored slacks. The Court will assume for purposes of this memorandum opinion that the individual is in fact a Wal-Mart employee, as, again, that construction is the one most favorable to Plaintiff.

At the 59:23 mark, a woman pushing a shopping cart with a small child walks through the substance before noticing that she has stepped in it. Two people walking behind this woman notice her reaction to having stepped in the hair gel, then look down at the floor to observe the substance. At 59:32, one of these individuals can be seen warning a small boy of the substance. Plaintiff can then be seen entering Area A at the 59:52 mark before slipping and falling on the substance in question at the 59:59 mark.

Plaintiff contends that summary judgment is not appropriate because the precise amount of time that the substance remained on the floor is known in this case. Citing a Tennessee Court of Appeals decision, Plaintiff claims that although the hair gel in question was on the floor for just two minutes and 18 seconds before the accident occurred, "that is all that Tennessee law requires to get this case in front of a jury." (DE 65 at 3.) However, this is a misconstruction of the case Plaintiff cites, *Ogle v. Winn-Dixie Greenville, Inc.*, which stands only for the proposition that courts should be vigilant in preventing conjecture from entering the jury deliberation process. *See* 919 S.W.2d 45, 47 (Tenn. Ct. App. 1995) ("When there is a complete absence of proof as to when and how the dangerous condition came about, it would be improper to permit the jury to speculate on these vital elements."). The decision does not hold that knowledge of the particular amount of time a condition existed inherently precludes summary judgment.

In fact, courts applying Tennessee law have previously held that summary judgment is appropriate based on a nominal lapse of time between a spill and an ensuing accident. *See, e.g., Miller v. Wal-Mart Stores East, LP*, No. 3:09-cv-173, 2011 WL 5023281, at *4 (E.D. Tenn. Oct. 20, 2011) (granting summary judgment in favor of defendant after concluding that a period of less than five minutes "is not enough time, as a matter of law, for Defendant to have

discovered the alleged condition and to have repaired or warned of it"); *Rogers ex rel. Wright v. Autozone Stores, Inc.*, No. M2011-02606-COA-R3CV, 2012 WL 3594342, at *7 (Tenn. Ct. App. Aug. 21, 2012) (holding that 15-20 minutes was not an unreasonable amount of time for a puddle of water to remain on the floor even though it was visible from the front counter of store); *Busler v. Cut Rate Super Mkt. No. 1*, 47 Tenn. App. 21, 26, 334 S.W.2d 738, 741 (1960) ("No Court has ever held that five minutes is sufficient constructive notice of a dangerous condition; to so hold would be to make the defendant an insurer."). Other courts have made similar judgments at the summary judgment stage when confronted with a dangerous condition that was shown to exist for only a brief period of time. *See, e.g., Heinrich v. Kroger Co.*, 2 F. App'x 413, 419-20 (6th Cir. 2001) (affirming summary judgment in part based on general manager's testimony that an inspection of the affected area confirmed the absence of the dangerous condition two minutes prior to the subject accident); *Stump v. Wal-Mart Stores, Inc.*, 946 F. Supp. 492, 494-95 (E.D. Ky.), *aff'd*, 103 F.3d 131 (6th Cir. 1996) (finding summary judgment was appropriate where assistant manager confirmed absence of dangerous condition 10-15 minutes prior to subject accident).

Moreover, the Tennessee Court of Appeals has made clear that "length of time the condition existed is not the only factor to be considered in determining whether or not the proprietor had constructive notice of the danger." *Paradiso v. Kroger Co.*, 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973) (affirming trial court's directed verdict in favor of defendant). The period of time that the condition existed instead "must be viewed in the light of the entire circumstance relevant to the incident." *White*, 2008 WL 4415781, at *5. A court's analysis should additionally

account for "the nature of the business, its size, the number of patrons, the nature of the danger, its location along with the foreseeable consequences." *Paradiso*, 499 S.W.2d at 79.

Plaintiff makes no attempt to demonstrate that any of these factors militate against summary judgment. This is a significant omission given that the evidence shows that numerous customers stepped in the substance without noticing it (DE 67-3 at 2), none of the customers who did notice the substance appears to have notified a Wal-Mart employee of the condition of the floor (*id.*), the substance itself was clear and therefore not readily discernible (*id.* at 3), and relevant undisputed testimony indicates that stepping in the substance was the only way to discover its existence. *Id.* The video footage shows that at least 20 different people walked through or immediately next to the area containing the spilled substance, yet by the Court's count, only six of those individuals noticed the presence of the substance on the floor. Of these six individuals, three noticed the substance only after witnessing another customer react to having stepped in the substance, while the other three individuals noticed it only after stepping in it themselves. This is a far cry from the "commotion" Plaintiff alleges took place as a result of the spill (DE 65 at 3), and weighs against any finding that Defendant should have discovered the hazardous condition. *See Griffin v. Wal-Mart Stores East, LP*, 30 F. Supp. 3d 717, 723 (E.D. Tenn. 2014) ("It is difficult to argue that a company should have constructive notice of a slippery floor when the 'substance' causing the floor to be in that condition is 'invisible' ... [and] it is undisputed that many shoppers walked over the same area before and after the fall ... without slipping or falling.").

Although it is "*generally* for the jury to say whether the condition causing the injury ... existed long enough that a reasonable man exercising reasonable care would have discovered it,"

*Allison v. Blount Nat. Bank,* 54 Tenn. App. 359, 390 S.W.2d 716, 719 (1965) (emphasis added), a plaintiff must provide "some material competent evidence ... [that] the proprietor, by the exercise of ordinary care, would have or should have discovered the dangerous condition" before the issue can be presented to a jury. *Piana v. Old Town of Jackson*, 316 S.W.3d 622, 631 (Tenn. Ct. App. 2009) (citing *Paradiso*, 499 S.W.2d at 80).

This requires more than establishing "the mere existence of a potentially dangerous foreign substance on the floor," *White*, 2008 WL 4415781, at *6 (internal citations omitted), and must account for factors such as the nature of the hazardous condition and any accompanying foreseeable consequences. *Traylor ex rel. Traylor v. Shelby Cty. Bd. of Educ.*, No. W2013-00836-COA-R3CV, 2014 WL 792131, at *10 (Tenn. Ct. App. Feb. 27, 2014). Here, the entirety of Plaintiff's position is that "at least one Wal-Mart associate was in close proximity but, arguably, failed to pay attention." (DE 65 at 3.) This perfunctory assertion disregards any of the extenuating circumstances present in this incident, which include both a display kiosk and a cluster of customers preventing any of the Wal-Mart employees in the vicinity from having an unobstructed view of the substance. This is a crucial deficiency since the Court is required to adopt a broad perspective of the facts at issue. *See White*, 2008 WL 4415781, at *5 (length of time a dangerous condition may have existed is one fact to be viewed considering entire relevant circumstances, as there is no bright-line test for the minimum or maximum minutes a dangerous condition must be present to establish constructive notice).

Even if the inadequacy of Plaintiff's argument about the proximity of a Wal-Mart employee is overlooked, the available evidence indicates that the hair gel in question was clear and invisible and went unnoticed unless contact with the substance was actually made. *See* DE

67-3 at 2-3; DE 68 at 3. By her own admission, Plaintiff could not see the hair gel on the floor even though her path to the substance was unencumbered for several feet prior to the accident. *See* DE 67-2 at 2-3. There is also no evidence that any employee failed to perform a timely inspection of the area containing the spilled substance. *Cf. Friar v. Kroger Co.*, No. 03A01-9710-CV-00470, 1998 WL 170140, at *7 (Tenn. Ct. App. Apr. 14, 1998) (affirming finding that defendant had constructive notice where manager who normally performed 15 to 20 inspections of the premises each day had only inspected the area containing the hazardous condition three or four times on the day in question).

Plaintiff's position therefore requires the Court to find that a reasonable juror could conclude that, although the substance was undetectable without direct contact (and was, in fact, undetected by multiple customers), three Wal-Mart employees who were at no point closer than several feet away from the substance, who were not notified of the spill, and whose vantage points were continuously obscured by either display kiosks or customers, should have noticed and removed the dangerous condition within the two minutes and 18 seconds it existed. Plaintiff has failed to provide any support for this position even after the Court specifically advised counsel that the existence of constructive notice was questionable at best.

While the Court is not unsympathetic to Plaintiff's fall, she has simply failed to carry her burden of demonstrating that Defendant caused or created the condition or that Defendant had constructive notice of the condition. Absent that showing, Defendant did not owe Plaintiff a duty to remedy the condition. Defendant is therefore entitled to judgment as a matter of law.

## III. CONCLUSION

For the reasons discussed above, the Court grants summary judgment to Defendant and DISMISSES this case WITH PREJUDICE pursuant to Rule 56 of the Federal Rules of Civil Procedure. An appropriate Order will be entered separately.

_____
BARBARA D. HOLMES
United States Magistrate Judge